1  Mark Ravis, M.D., J.D. [SBN: 137479]
   Karen Travis, Esq. [SBN: 128162]
2  Robert Uyeda, M.D., J.D. [SBN: 241812]
   RAVIS & TRAVIS
3  10866 Wilshire Boulevard, Suite 400
   Los Angeles, California 90024
4  Telephone: 424-901-8362
   Fax: 310-388-5251
5  Email: mravis99@gmail.com

6  Attorney for Plaintt/Relator, PAULA TORRES

7

8              UNITED STATES DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11                                          CASE NO. CV09-8324 PA (AGRx)

   UNITED STATES OF AMERICA EX      )
12 REL. PAULA TORRES,               )        FALSE CLAIMS COMPLAINT
                                    )
13               Plaintiff,         )        **FILED IN CAMERA AND UNDER**
                                    )        **SEAL**
14        v.                        )
                                    )
15 ATLANTIC RECOVERY SERVICES,      )        **DEMAND FOR JURY TRIAL**
   INC. and ALL TREATMENT          )
16 CENTERS OWNED OR OPERATED        )
   BY THEM; NEW BEGINNINGS          )
17 RECOVERY TREATMENT CENTER;       )
   SOLEDAD ENRICHMENT ACTION;       )
18 LUNNIS HOPE; CHOICES OF LONG     )
   BEACH; MOUNT SINAI; NCADD        )
19 WOMAN TO WOMAN; AEGIS;           )
   AMITY FOUNDATION;                )
20 CALIFORNIA TREATMENT             )
   CENTERS; VOLUNTEERS OF           )
21 AFRICA; CLINICA DEL PUEBLO;      )
   TARZANA TREATMENT CENTERS;       )
22 PACIFIC CLINICS; BEHAVIORAL      )
   HEALTH SYSTEMS; LATINOS          )
23 FAMILY SERVICES; WESTERN         )
   PACIFIC MEDICAL CORPORATION;     )
24 CASA DE HERMANDAD/WEST ARE       )
   OPPORTUNITY CENTER;              )
25 F.O.U.N.D.; WE CAN HELP          )
   FOUNDATION; MATERNITY            )
26 ─────────────────────────────────

27                              1

28                      **COMPLAINT**

2009 NOV 13 PM 1:52
FILED



DOCKETED ON CM
NOV 17 2009

1  Mark Ravis, M.D., J.D. [SBN: 137479]
   Karen Travis, Esq. [SBN: 128162]
2  Robert Uyeda, M.D., J.D. [SBN: 241812]
   RAVIS & TRAVIS
3  10866 Wilshire Boulevard, Suite 400
   Los Angeles, California 90024
4  Telephone: 424-901-8362
   Fax: 310-388-5251
5  Email: mravis99@gmail.com

6  Attorney for Plaintt/Relator, PAULA TORRES

7

8                  UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                     LOS ANGELES DIVISION

11                                              CASE NO. **CV09- 8324 PA (AGRx)**

12  UNITED STATES OF AMERICA EX  )
    REL. PAULA TORRES,           )              FALSE CLAIMS COMPLAINT
13                               )
            Plaintiff,           )              **FILED IN CAMERA AND UNDER**
14                               )              **SEAL**
        v.                       )
15                               )
    ATLANTIC RECOVERY SERVICES,  )
16  INC. and ALL TREATMENT       )
    CENTERS OWNED OR OPERATED    )              **DEMAND FOR JURY TRIAL**
17  BY THEM; NEW BEGINNINGS      )
    RECOVERY TREATMENT CENTER;   )
18  SOLEDAD ENRICHMENT ACTION;   )
    LUNNIS HOPE; CHOICES OF LONG )
19  BEACH; MOUNT SINAI; NCADD    )
    WOMAN TO WOMAN; AEGIS;       )
20  AMITY FOUNDATION;            )
    CALIFORNIA TREATMENT         )
21  CENTERS; VOLUNTEERS OF       )
    AFRICA; CLINICA DEL PUEBLO;  )
22  TARZANA TREATMENT CENTERS;   )
    PACIFIC CLINICS; BEHAVIORAL  )
23  HEALTH SYSTEMS; LATINOS      )
    FAMILY SERVICES; WESTERN     )
24  PACIFIC MEDICAL CORPORATION; )
    CASA DE HERMANDAD/WEST ARE   )
25  OPPORTUNITY CENTER;          )
    F.O.U.N.D.; WE CAN HELP      )
26  FOUNDATION; MATERNITY        )

27                              1

28                        **COMPLAINT**

1  HOUSE; CYCLE OF HOPE; MOUNT
   CARMEL TREATMENT; BEACON
2  HOUSE; RICHARD CIAMPA; LORI
   MILLER and DOES 1 to 10, Inclusive,
3
              Defendants.
4  _____

5
                    COMPLAINT
6

7      NOW COMES PLAINTIFF, UNITED STATES OF AMERICA, and QUI TAM

8  PLAINTIFF, PAULA TORRES, by her undersigned attorneys, and file this Federal False Claims

9  Complaint against DEFENDANTS, ATLANTIC RECOVERY SERVICES, INC. ; NEW

10 BEGINNINGS RECOVERY TREATMENT CENTER; SOLEDAD ENRICHMENT ACTION;

11 LUNNIS HOPE; CHOICES OF LONG BEACH; MOUNT SINAI; NCADD WOMAN TO

12 WOMAN; AEGIS; AMITY FOUNDATION; CALIFORNIA TREATMENT CENTERS;

13 VOLUNTEERS OF AFRICA; CLINICA DEL PUEBLO; TARZANA TREATMENT

14 CENTERS; PACIFIC CLINICS; BEHAVIORAL HEALTH SYSTEMS; LATINOS FAMILY

15 SERVICES; WESTERN PACIFIC MEDICAL CORPORATION; CASA DE

16 HERMANDAD/WEST ARE OPPORTUNITY CENTER; F.O.U.N.D.; WE CAN HELP

17 FOUNDATION; MATERNITY HOUSE; CYCLE OF HOPE; MOUNT CARMEL

18 TREATMENT; BEACON HOUSE and DOES 1 to 10, Inclusive,

19 and respectfully allege as follows:

20                  **INTRODUCTION**

21 1.   This is a civil action to recover damages and civil penalties on behalf of the United States

22      of America arising from false statements and claims made and presented by the

23      defendants and/or their agents, employees and co-conspirators in violation of the Federal

24      False Claims Act, ("the Act") 31 U.S.C. §§3729 et seq., as amended.  The violations of

25      the Act involve claims made on the Drug Medi-Cal Program (DMP) and claims for

26

27                        2

28                    **COMPLAINT**

1    dependent individuals since at least 2005 which defendants knew were false, exaggerated

2    and/or ineligible.  In violation of their duty to report known errors resulting in

3    unwarranted federal payments, defendants likewise concealed such errors from

4    Government agents in order to keep funds to which they were not entitled.

5    2.    The Act provides that any person who knowingly submits or causes to be submitted a

6          false or fraudulent claim to the Government for payment or approval is liable for a civil

7          penalty of up to $10,000 for each such claim submitted or paid, plus three times the

8          amount of damages sustained by the Government.  Liability attaches both when a

9          defendant knowingly seeks payment that is unwarranted from the Government and when

10         false records or statements are knowingly created or caused to be used to conceal, avoid

11         or decrease an obligation to pay or transmit money to the Government.  The Act allows

12         any person having information regarding a false or fraudulent claim against the

13         Government to bring an action for himself (the "relator") and for the Government and to

14         share in any recovery.  The Complaint is filed under seal for 60 days (without service on

15         the defendants during that period) to enable the Government: (a) to conduct its own

16         investigation without the defendants' knowledge, and (b) to determine whether to join the

17         action.

18   3.    Based on those provisions, plaintiff/relator Paula Torres ("Torres") seeks to recover

19         damages and civil penalties arising from defendants' presentation of false records, claims,

20         and statements to the United States Government and its agents in connection with

21         defendants' claims for reimbursement for services provided individuals under the

22         Medicaid program. Plaintiff/relator Torres also seeks to recover damages arising from

23         defendants' unlawful practice of permitting records that defendants have discovered,

24         learned, and know contain erroneous and outdated information to be relied upon by the

25         Government as the basis upon which to pay defendants excessive reimbursement from

26

27                                               3

28                                       **COMPLAINT**

1    federal funds.

2                                  **PARTIES**

3    4.    Plaintiffs are the United States of America ("United States") and Relator Paula Torres.

4          Plaintiff Paula Torres was an independent contractor for Atlantic Recovery Systems, Inc.

5          ("ARS") and the owner of California Certification Board of Chemical Dependency

6          Counselors ("CCBCDC").   CCBCDC is one of nine boards which is authorized to

7          certify chemical dependency counselors in California.  Relator Torres has been in a

8          unique position to learn of the misconduct of defendants since she has certified

9          approximately two thousand counselors who have subsequently been employed by all of

10         the defendants.  These counselors have regularly reported billing fraud to Relator.  These

11         counselors are identified as are the bogus treatments and phantom clients in the exhibits

12         attached to this Complaint on the accompanying CD.

13   5.    On information and belief, defendant Atlantic Recovery Systems, Inc. ("ARS") is a

14         California corporation which operates approximately 68 drug and alcohol treatment

15         centers in southern California and is an agent or subcontractor to the other defendants

16         named in this complaint.  It bills Medi-Cal for services rendered to clients and also

17         receives federal grant monies.

18   6.    Defendant New Beginnings Recovery Treatment Center, Inc. is a California corporation

19         which operates multiple drug and alcohol treatment centers in Southern California.  It

20         bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has

21         contractual relationships to other defendants named in this complaint.

22   7.    Defendant Soledad Enrichment Action ("SEA") is a California corporation which

23         operates multiple drug and alcohol treatment centers in Southern California.  It has

24         contractual relationships with other defendant providers, notably ARS.  It bills Medi-Cal

25         for services allegedly rendered to drug and alcohol clients.

26

27                                       4

28                                  **COMPLAINT**

8.   Defendant Lunnis Hope is a California corporation which operates multiple drug and alcohol treatment centers in Southern California.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

9..   Defendant Choices of Long Beach is a California corporation that operates multiple drug and alcohol treatment centers in Los Angeles County.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

10.   Defendant Mount Sinai is a California corporation that operates multiple drug and alcohol treatment facilities in Los Angeles County.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

11.   Defendant NCADD Woman to Woman is a California corporation which operates multiple drug and alcohol treatment facilities in Southern California.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

12.   Defendant Aegis is a California Corporation which operates multiple drug and alcohol treatment facilities in Los Angeles County.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

13.   Defendant Amity Foundation is a California Corporation which operates multiple drug and alcohol treatment facilities in Los Angeles County.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

14.   Defendant California Treatment Centers is a California Corporation which operates

5

**COMPLAINT**

multiple drug and alcohol treatment facilities in Los Angeles County.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

15. Volunteers of Africa is a California Corporation which operates multiple drug and alcohol treatment facilities in Los Angeles County.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

16. Clinica Del Pueblo is a California Corporation which operates multiple drug and alcohol treatment facilities in Los Angeles County.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

17. Tarzana Treatment Centers is a California Corporation which operates multiple drug and alcohol treatment facilities in Los Angeles County.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

18. Pacific Clinics is a California Corporation which provides mental health care.  It bills Medi-Cal for services rendered to clients being treated for drug and alcohol problems.  It contracts with other named defendants.

19. Behavioral Health Systems is a California Corporation providing alcohol and mental health services to clients who have had problems with alcohol or other drugs.  It bills Medi-Cal for services rendered to clients being treated for drug and alcohol problems.  It contracts with other named defendants.

20. Latinos Family Services is a California Corporation which operates multiple treatment centers in Los Angeles County for drug and alcohol patients.  It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to

6

**COMPLAINT**

1   other defendants named in this complaint.

2   21.   Western Pacific Medical Corporation is a California Corporation which operates multiple

3   treatment centers in Los Angeles County for drug and alcohol patients.  It bills Medi-Cal

4   for services allegedly rendered to drug and alcohol clients and has contractual

5   relationships to other defendants named in this complaint.

6   22.   Casa de Hermandad/West Area Opportunity Center is a California Corporation which

7   operates multiple treatment centers in Los Angeles County for drug and alcohol patients.

8   It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has

9   contractual relationships to other defendants named in this complaint.

10  23.   F.O.U.N.D. is a California Corporation which operates multiple treatment centers in Los

11  Angeles County for drug and alcohol patients.  It bills Medi-Cal for services allegedly

12  rendered to drug and alcohol clients and has contractual relationships to other defendants

13  named in this complaint.

14  24.   We Can Help Foundation is a California Corporation which operates multiple treatment

15  centers in Los Angeles County for drug and alcohol patients.  It bills Medi-Cal for

16  services allegedly rendered to drug and alcohol clients and has contractual relationships to

17  other defendants named in this complaint.

18  25.   Maternity House is a California Corporation which operates multiple treatment centers in

19  Los Angeles County for drug and alcohol patients.  It bills Medi-Cal for services

20  allegedly rendered to drug and alcohol clients and has contractual relationships to other

21  defendants named in this complaint.

22  26.   Cycle of Hope is a California Corporation which operates multiple treatment centers in

23  Los Angeles County for drug and alcohol patients.  It bills Medi-Cal for services

24  allegedly rendered to drug and alcohol clients and has contractual relationships to other

25  defendants named in this complaint.

26

27  ───────────────────────────────────────
        7

28  **COMPLAINT**

27. Mount Carmel Treatment is a California Corporation which operates multiple treatment centers in Los Angeles County for drug and alcohol patients. It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

28. Beacon House is a California Corporation which operates multiple treatment centers in Los Angeles County for drug and alcohol patients. It bills Medi-Cal for services allegedly rendered to drug and alcohol clients and has contractual relationships to other defendants named in this complaint.

29. Defendant Richard Ciampa is the founder, President, and Chief Operating Officer of ARS.

30. Defendant Lori Miller is and has been the Executive Director of ARS at all times relevant to the facts herein.

31. Defendants Does 1 to 10, inclusive are treatment providers for clients with drug and alcohol problems. They each bill Medi-Cal for clients who allegedly have drug and alcohol problems. Many of the clients are non-existent or do not have drug and alcohol problems.

32. Each of the defendants have engaged in billing for clients that do not exist or billing for services that were not rendered or billing for counseling services by unqualified persons acting as counselors. They have acted alone and, in many case, in collusion with one another. Relator has filed as part of this Complaint a CD with approximately two thousand pages of supporting documentation.

## JURISDICTION AND VENUE

33. This court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §§ 1331 and 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions

34. This Court has personal jurisdiction over the defendants pursuant to 31 U.S.C. §3732(a),

---

8

**COMPLAINT**

1  which provides that "[a]ny action under section 3730 may be brought in any judicial

2  district in which the defendant, or in the case of multiple defendants, any one defendant

3  can be found, resides, transacts business or in which any act proscribed by section 3729

4  occurred."

5  35.  Venue is proper in this district under 31 U.S.C. §3732(a).  Defendants do and have done

6  business in this district at all times material to this action and many have their principal

7  place of business in Los Angeles County.  The amount of the claim exceeds the

8  jurisdictional requirement of the court.  Plaintiff Paula Torres resides in Los Angeles

9  County.  The claims set forth in this complaint arose in this district.

10  <u>HISTORICAL BACKGROUND</u>

11  36.  Plaintiff/Relator Torres  re-alleges paragraphs 1 through 8 as if set forth in full hereat.

12  37.  The Department of Alcohol and Drug Programs (ADP) was established in 1978 and is the

13  single state agency responsible for administering and coordinating California's efforts in

14  alcohol and other drug (AOD) abuse prevention, treatment, and recovery services.  It is

15  an agency within the California Department of Health Care Services.

16  38.  The ADP Drug Medi-Cal (DMC) program began in 1980 when the first interagency

17  agreement was negotiated between ADP and what is now known as the California

18  Department of Health Care Services.  The California Department of Health Care Services

19  is the single state agency to receive and administer federal funds from the Centers for

20  Medicare and Medicaid Services (CMS) for California residents.  Upon negotiation of the

21  first interagency agreement, 22 counties contracted with ADP to participate in the DMC

22  program and subcontracted with 40 service providers to treat DMC-eligible clients.

23  Today, 39 counties contract with ADP and subcontract with providers to treat DMC-

24  eligible clients.

25  39.  Since DHCS is the single state agency for Medicaid services, it is responsible for Medi-

26

27  9

28  **COMPLAINT**

1    Cal implementation.  The Welfare and Institutions Code, section 14113, authorizes

2    DHCS to enter into contracts with other state departments, including ADP.  These other

3    departments (such as the Department of Mental Health and Social Services) are

4    responsible for Medicaid services in their fields of expertise.  DHCS retains overall

5    responsibility for decision-making on Medi-Cal issues such as fair hearing practrices,

6    regulations pertaining to provision of services to beneficiaries, and provision of federal

7    matching funds for the cost of services.  ADP, as one of the  DHCS subcontractors

8    develops maximum reimbursement rates for each DMC treatment modality.  DHCS the

9    DHCS reviews and approves these rates and places them in regulation.

10   40.   The DMC Program provides services to those lacking health insurance and meeting

11         income eligibility; services are limited to those with incomes up to 250 percent of the

12         federal poverty level.  ADP makes Medi-Cal monies available to the participating

13         counties.  Treatment providers submit their invoices to the county office handling these

14         funds.

15   41,   This targeted group includes uninsured families and individuals whose incomes are too

16         high to qualify them for cash assistance but who otherwise qualify for enrollment in the

17         The California Work Opportunity and Responsibility to Kids (CalWORKs) or for

18         Supplemental Security Income/State Supplemental Payment (SSI/SSP).

19   42.   For FY 2006-07, the total federal and State General Fund (SGF) appropriation for the

20         DMC Program was $141.5 million.  The 39 counties that contract with ADP to provide

21         DMC treatment services subcontract with more than a thousand service providers.  In

22         addition, ADP has separate contracts with approximately 36 additional "direct providers"

23         that provide DMC treatment services at the local level, but do not subcontract with a

24         DMC-participating county.

25   43.   The DMC program offers those income eligible, with a medically determined need for the

26

27                                            10

28                                      **COMPLAINT**

services: Outpatient Drug Free, Naltrexone and Narcotic Treatment services.  In addition, Day Care Rehabilitative and Residential Treatment are available to pregnant and postpartum women and full-scope Medi-Cal beneficiaries under the age of 21.

44.    A very close, closed and tight-knit relationship has developed over the years  between officials at ADP and the treatment providers receiving the state and federal funds.  This relationship, as will be discussed below, affects the allocation of federal funds and existence of widespread fraudulent billing by treatment providers.

45.    ADP has set up a system of advisory committees, the members of which include the owners and operators of the treatment centers ADP is obligated to regulate and monitor. The advisory committees make or participate in making decisions regarding the allocation of federal grant funds which are made available to ADP to treat patients addicted to drugs and alcohol.  The owners and operators of the treatment centers allocate funds to their own treatment centers.  This is a violation of California Conflict of Interest Codes codified in Goverment Code section 87300 et seq.

46.    The advisory committees, also known as constituent committees, are:

        a) African-American Constituent Committee; Chairperson: Derrick Harvey.  Mr. Harvey is also the Executive Director the Riverside Recovery Resources.

        b) Aging Constituent Committee; Chairperson: Deborah Levan, an executive with the Behavioral Health Services, Inc. (BHS) headquarted in Gardena, CA.  which operates multiple inpatient and outpatient treatment centers in Los Angeles County and receives funds from ADP.

        c) Asian/Pacific Islander Constituent Committee; Chairperson: Alicia DeLeon-Torres.  Ms. DeLeon-Torres (no relation to Relator) is an executive with the National Asian Pacific American Families Against Substance Abue (NAPAFASA) which is a non-profit organization receiving funds from ADP.

11

**COMPLAINT**

1              d) Disability Constituent Committee

2              e) Lesbian, Gay, Bisexual & Transgender Constituent Committee

3              f) Latino Constituent Committee

4              g) Native American Constituent Committee

5              i) Women's Constituent Committee

6      The Chair of each of the Constituent Committees serves as a member of the Director's

7      Advisory Committee (DAC). The DAC has significant input into the allocation of federal

8      funds to treatment centers.

9  47.  There has been a revolving door of ADP executives going to work for treatment

10      providers. Many of the providers are multi-million dollar operations (for example,

11      Tarzana Treatment Centers, Atlantic Recovery Resources) operating scores of treatment

12      facilities all of which are dependent on Medi-Cal billing and federal grants. As will be

13      discussed, many of these treatment facilities are unlicensed and actually ineligible to

14      receive federal funds.

15  48.  It is public knowledge, at least within government circles, that the ADP is the unwanted

16      stepchild of the State Department of Health. Many argued in the late 1970s that the

17      services provided by ADP could be better provided by already-existing agencies, such as

18      the Department of Mental Health. Nonetheless, ADP was created and now consists of a

19      bureaucracy of some 300 employees, many of whom are former addicts. ADP's mission

20      is to license treatment centers and monitor their operation, distribute federal grant monies

21      allotted to it, monitor for Medi-Cal fraud and establish standards for the drug and alcohol

22      treatment counselors and centers.

23  49.  ADP has largely failed as an effective institution. In reality, it has become a captive of a

24      lucrative and fraudulent drug and alcohol treatment industry. A pathological symbiotic

25      relationship has evolved between the ADP and the industry it is required to regulate.

26

27                                 12

28                           **COMPLAINT**

1   ADP needs the industry with its treatment centers or treatment can't be administered and

2   its raison d'etre disappears; industry needs a complaint ADP to turn a blind eye toward

3   billing fraud.

4   50.   In the 31 years it has existed there has not been a single arrest or prosecution for Medi-

5   Cal fraud even though investigators within the department have recommended

6   prosecution in as many as 40 cases per year. [Relator will provide the witness who can

7   testify to this figure].  The failure to investigate and prosecute wrongdoing must be

8   viewed in the context of hundreds of millions of dollars billed by the treatment centers.

9   These investigations and the recommendations for prosecution have been terminated,

10   sabotaged and permanently waylaid by top ADP personnel, including defendant former

11   Chief Deputy Rebecca Lira and defendant former Director Kathy Jett.

12   51.   Overlooking billing fraud has not been the only way ADP has been complicit in violating

13   the public trust by condoning the improper expenditure of federal funds.  Licensing of

14   inadequate treatment facilities in another method.  Once a treatment facility is licensed it

15   or its parent corporation can begin submitting Medi-Cal bills.  Plaintiff has evidence that

16   some inspectors, Jim Cortese and Gwendolyn Nicholas, have spent as little as 5 seconds

17   inspecting a facility for licensing.

18   52.   Many small rooms capable of accommodating a few people become licensed facilities

19   and begin submitting Medi-Cal bills.  Many of the patients/clients don't even exist and, in

20   other instances, even if they exist, services aren't given, and yet in both instances bills are

21   submitted for Medi-Cal reimbursement.

22   **DEFENDANTS FRAUDULENT BILLING SCHEMES**

23   53.   Defendants have committed fraudulent billing in the following ways:

24   (a)   Billing for clients who do not have drug or alcohol problems;

25   (b)   Billing from unlicensed facilities or facilities that should not have been licensed;

26

27   13

28   **COMPLAINT**

1    (c)    Billing for providing mental health services to clients without any mental health

2  issues;

3    (d)    Sharing lists of clients with each other so that the same client is billed by different

4  entities and then the entities paying kickbacks to each other;

5    (e)    Not providing the services to clients who need them;

6    (f)    Billing for services by unqualified, non-certified counselors (sometimes just the

7  security guard on duty);

8    (g)    Paying real estate entities they own high rents for offices in their buildings with

9  government funds which are suppose to be used for treatment.

10  54.    Relator has provided substantial documentary support, consisting of complaints from

11  counselors she has certified, demonstrating that counselors are being asked to collect names in

12  schools in which certain defendants have contracts to provide drug and alcohol counseling. [See

13  attached Evidentiary CD filed concurrently herewith and incorporated herein by reference].

14  Counselors are told to gather up as many names as possible without regard to whether the student

15  has a drug or alcohol problem.  Counselors sometimes are told to just copy down names of

16  students enrolled in certain classes.  The students don't know they are receiving counseling

17  services or that billing is being done in their names.

18  55.    The same thing is done for defendants who allegedly provide mental health services.

19  Many of the clients don't know that they are mentally ill or that they are receiving therapy or that

20  Medi-Cal is being billed for it.  The drug and alcohol programs share clients lists with the mental

21  health providers.

22  56.    The State Department of Alcohol and Drug Programs has been entirely derelict in

23  investigating Medi-Cal claims.  Nearly every investigation to date has been shut down by top

24  executives of ADP and there has never been an arrest.  The relationships between providers and

25  top regulators has been extremely cozy to say the least.  When an inspection is to be done, the

26

27  _____

27    14

28    **COMPLAINT**

1    treatment centers are alerted well in advance so that everything will be in order.  The providers

2    have taken full advantage of this cozy relationship and have billed hundreds of millions of dollars

3    over the past decade or so.

4    57.      Relator has herself submitted complaints to ADP that counselors certified by her

5    organization have forwarded to her.  Nothing has ever been done.

6    58.      Relator has provided, on the Evidentiary CD submitted herewith, hundreds of counselor

7    complaints, lists of bogus clients and statements from clients regarding services that were never

8    rendered yet were billed for.  All defendants have engaged in these practices extensively.  There

9    are documents on the CD relating to each of the defendants.

10    59.      Relator has provided documentary evidence showing that clients are "shared" among

11    treatment providers and they submit bills for services that are not rendered and vary the dates on

12    the Medi-Cal claims.  The providers then pay each other to even things out so that they all

13    benefit.  These payments are camouflaged by contractual arrangements for services that don't

14    exist or are overvalued.

15    60.      Many of the "counselors" used by defendants are not certified or have lost their

16    certification.  They are not suppose to be providing services nor are services rendered by them

17    billable.  Yet, defendants regularly bill for such counselors.  Some of these counselors are

18    identified on the accompanying CD.

19    60.      Treatment providers, notably Atlantic Recovery Services, does not operate as it is

20    suppose to with a Board of Diretors.  It is owned and run by defendant Richard Ciampa and

21    operated with the assistance of Lori Miller, the Executive Director.  Board meetings do not

22    occur.  Relator was listed as a Board member without her knowledge.  She was also listed with

23    the Secretary of State as the Chief Financial Officer of ARS.  Neither were true.  She has never

24    been on the Board, never attended a Board meeting, if any has ever occurred, and certainly has

25    not been a CFO [as Ciampa has recently admitted].

26

27    15

28    **COMPLAINT**

61.   Defendant Atlantic Recovery, like some other treatment providers, has been paying entities owned by Ciampa or his family members, high rents.  Ciampa or his family own several real estate firms which in turn own properties that lease space to the treatment centers.  These centers then pay high rents to Ciampa and his real estate organizations.  This is in addition to the monies he takes as salary.

62.   Ciampa has been able to secure without difficulty contracts with the County of Los Angeles to provide drug and alcohol counseling services, often in non-licensed facilities, no bigger than one small room which would only accommodate a few people, fewer than is allowed to bill for group sessions.  Once approved by the county, Ciampa, and other defendants, may bill Medi-Cal for seeing clients at those facilities.  Ciampa employs the sister of the chief contracting agent for Los Angeles County.

## COUNT ONE

## SUBSTANTIVE VIOLATIONS OF THE FALSE CLAIMS ACT

[31 U.S.C. §§ 3729(a)(1), (a)(2), (a)(7) and 3732(b)

63.   Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 62 of this Complaint.

64.   This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§3729-32, as amended.

65.   Through the acts described above, defendants and their agents and employees knowingly presented and caused to be presented to the state governments participating in the Medicaid program, false and fraudulent claims, records, and statements in order to obtain reimbursement for health care services provided under Medicaid and provided by federal grants.

66.   Through the acts described above and otherwise, defendants and their agents and employees knowingly made, used, and/or caused to be made or used false records and statements in order to get such false and fraudulent claims paid and approved by the Medi-Cal payor for the

16

## COMPLAINT

1  California.

2  67.    Through the acts described above and otherwise, defendants and their agents and

3  employees knowingly made, used, and caused to be made or used false records and statements to

4  conceal, avoid, and/or decrease defendant' obligations to repay money to the United States

5  government for its share of the Medi-Cal money fraudulently paid to defendants.  Defendants

6  also failed to disclose to the Government material facts that would have resulted in substantial

7  repayments by them to the federal and state governments.

8  68.    The United States, its fiscal intermediaries, and the California Medicaid Program (Medi-

9  Cal), unaware of the falsity of the records, statements, and claims made or submitted by

10  defendants and their agents and employees paid and continue to pay defendants for claims that

11  would not be paid if the truth were known.

12  69.    Plaintiff United States and the California Medicaid (Medi-Cal) Program, unaware of the

13  falsity of the records, statements and claims made or submitted by defendants—or of their failure

14  to disclose material facts which would have reduced government obligations—have not

15  recovered Medi-Cal or federal grant funds that would have been recovered otherwise.

16  70.    By reason of the defendants' false records, statements, claims, and omissions, the United

17  States and the California Medi-Cal Program have been damaged in the amount of many millions

18  of dollars in Medicaid and federal grant funds.

19  **COUNT II**

20  **FALSE CLAIMS ACT CONSPIRACY**

21  71,    Relator realleges and incorporates by reference the allegations made in Paragraphs 1 to 70

22  of this Complaint.

23  72.    This is a claim for treble damages and for forfeiture under the False Claims Act, 31 U.S.C.

24  §§ 3729 et seq., as amended.

25  73.    Through the acts described above and otherwise, defendants entered into a conspiracy or

26

27  17

28  **COMPLAINT**

1  conspiracies among themselves and with others to defraud the United States and the California

2  Medi-Cal Program by getting false and fraudulent claims allowed or paid and by paying

3  themselves kickbacks in the form of rent and other fees.  Defendants have also conspired to omit

4  disclosing or to actively conceal facts which, if known, would have reduced government

5  obligations to them or resulted in repayments from them to government programs.  Defendants

6  have taken substantial steps in furtherance of those conspiracies, inter alia, by preparing false

7  claims including those for phantom clients or for services never rendered or services rendered by

8  unqualified personnel or services rendered in unqualified locations or payments of concealed

9  kickbacks falsely labeled as expenses.  These records have been submitted to the Government to

10  induce payment.  Defendants have directed their agents, consultants and personnel not to disclose

11  and/or to conceal defendants' fraudulent practices.

12  74.    The United States, its state fiscal intermediaries and the California Medi-Cal Program,

13  unaware of defendants' conspiracies or of the falsity of the records, statements and claims made

14  by defendants and their agents, employees and co-conspirators, and as a result thereof, have paid

15  and continue to pay millions of dollars in Medi-Cal and federal grant funds that they would not

16  have otherwise paid.  Furthermore, because of the false records, statements, claims and omissions

17  by defendants and their agents, employees and co-conspirators, the United States, its state fiscal

18  intermediary and the state Medi-Cal Program have not recovered the funds from defendants that

19  otherwise would have been recovered.

20  ### PRAYER

21  WHEREFORE, plaintiff/relator prays for judgment against defendants as follows:

22  (1)   That defendants cease and desist from violating 31 U.S.C. § 3729 et seq.;

23  (2)   That the Court enter judgment against defendants in an amount equal to three times

24  the amount of damages the United States has sustained as a result of defendants' actions, as well

25  as a civil penalty against each defendant of $10,000 for each violation of 31 U.S.C. § 3729;

26

27  18

28  **COMPLAINT**

1      (3)    That plaintiff/relator be awarded the maximum amount allowed pursuant to §

2 3730(d) of the Federal Civil False Claims Act;

3      (4)    That plaintiff/relator be awarded all costs and expenses of this action, including

4 attorneys' fees; and,

5      (5)    That the United States and plaintiff/relator receive all such other relief as the Court

6 deems just and proper.

7 **JURY DEMAND**

8      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands

9 trial by jury.

10 Dated:  November 12, 2009

11      By: _____

12      Mark Ravis, M.D., J.D., Attorney
     for Plaintiff/Relator, PAULA TORRES

19

**COMPLAINT**